HOLLAND & KNIGHT LLP
Sean C. Sheely, Esq.
31 West 52nd Street
New York, NY  10016
Tel:  (212) 513-3538
Fax:  (212) 385-9010
sean.sheely@hklaw.com

*Attorneys for Plaintiffs*
*Tejinder Singh Glamour and Maninder Pal Glamour solely in their capacity as Trustees for The*
*Tejinder S. Glamour and Maninder P. Glamour Revocable Living Trust, Sukhminder Pannu,*
*Prabhjot Dhillon, and Huzaifa Husain*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEJINDER SINGH GLAMOUR AND MANINDER PAL GLAMOUR SOLELY IN THEIR CAPACITY AS TRUSTEES FOR THE TEJINDER S. GLAMOUR & MANINDER P. GLAMOUR REVOCABLE LIVING TRUST, HUZAIFA HUSAIN, SUKHMINDER PANNU and PRABHJOT DHILLON,<br><br>        Plaintiffs,<br><br>    -against-<br><br>INTERACTIVE BROKERS, LLC,<br><br>        Defendant. | **COMPLAINT**<br><br>Civil Action No. _____ |

Plaintiffs Tejinder Singh Glamour and Maninder Pal Glamour, solely in their capacity as

Trustees for and on behalf of The Tejinder S. Glamour and Maninder P. Glamour Revocable

Living Trust, (the "Trust"), Sukhminder Pannu and Prabhjot Dhillon (together, the "Pannus"),

and  Huzaifa  Husain  ("Husain"),  (together,  the  "Customers"  or  "Plaintiffs"),  through  their

undersigned counsel, for their Complaint against defendant Interactive Brokers, LLC ("IB" or "Interactive Brokers" or "Defendant"), alleges at follows:

## PRELIMINARY STATEMENT

1.       This is an action for injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 to stay three separate arbitrations and enjoin IB from continuing these arbitrations so that the claims may be heard and adjudicated as part of the pending class action captioned *Heather Hauptman, and Timothy Moss v. IB, LLC, U.S. District Court for the Southern District of New York Case No. 17-cv-9382 (the "Class Action")* pending before the Honorable George B. Daniel of the Southern District of New York.

2.       Customers and IB agreed to arbitrate disputes that arise between them under the rules of the arbitral forum (Financial Industry Regulatory Authority ("FINRA")) and other FINRA rules applicable to broker-dealers such as IB.  The FINRA rules explicitly preclude broker-dealers who are members of FINRA, such as Defendant, from interfering with class certification and participation by putative class members, such as the Customers, in class action litigation involving claims based on the same facts and law as are at issue in the arbitration and the same defendants.  Moreover, the FINRA rules provide for a party to a class action to ask the court hearing the class action to resolve disputes as to whether a claim in the arbitration is part of a class action.

3.       Accordingly, Customers seek a judicial determination that according to the explicit terms of the arbitration clause at issue that they are members of a putative class action involving similar claims as are at issue in their respective arbitrations with IB so as to preclude FINRA arbitration of the claims between Customers and IB unless or until the Class Action is

dismissed, class certification is denied or Customers are otherwise excluded from the class, none of which has occurred to date.

4.     Consistent therewith, Customers seek a preliminary injunction staying  defendant broker-dealer from pursuing FINRA arbitrations in light of the pending Class Action. Customers are also seeking preliminary injunctive relief to stay the three pending arbitrations with IB such that Customers may elect to participate in the class action brought on behalf of similarly situated IB Customers, in accordance with the terms of the arbitration clause in their customer agreement and the FINRA rules of their arbitration forum.

## PARTIES

**Plaintiffs**

5.     Plaintiffs Tejinder Singh Glamour and Maninder Pal Glamour, are individual Florida residents, and bring this action in solely in their capacity as Trustees for the Tejinder S. Glamour and Maninder P. Glamour Revocable Living Trust, a Florida trust formed for their benefit.

6.     Plaintiff Huzaifa Husain is an individual and resident of the United Arab Emeritus.

7.     Plaintiffs Sukhminder Pannu and Prabhjot Dhillon are individuals and both New York residents.

**Defendant**

8.     Upon information and belief, Defendant Interactive Brokers, LLC is a Connecticut limited liability company with its principal place of business in Greenwich, Connecticut.

9.      Upon information and belief, Interactive Brokers is licensed to do business in the state of New York, and is a broker-dealer registered with the U.S. Securities and Exchange Commission and a member of FINRA.[1]

10.      According to its website, Interactive Brokers provides direct access ("on line") trade execution and clearing services to institutional and professional traders for a wide variety of electronically traded products including stocks, options, futures, forex, bonds, CFDs and funds worldwide.

## JURISDICTION AND VENUE

11.      This court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa(a) because this action involves claims and duties arising under the Securities Exchange Act of 1934, 15 U.S.C. §78a, et seq. (the "Exchange Act") and rules promulgated thereunder.

12.      As detailed further herein, the arbitration and agreements at issue between the Customers and IB involve claims to be submitted to the FINRA Dispute Resolution forum pursuant to the FINRA Code of Arbitration Procedure (the "FINRA Code"), which FINRA Code is also explicitly incorporated by reference into the arbitration agreement between Customers and IB.

13.      The FINRA Code, including the specific provisions at issue in these proceedings, are adopted pursuant to the Exchange Act and its notice-and-comment rulemaking procedures set forth in 15 U.S.C. §§ 78o, 78s(b).  Moreover, approval of the FINRA Code under the Exchange

---

[1] FINRA is the self-regulatory organization ("SRO") for federally registered broker-dealers, of which IB as a broker-dealer is required to be a member and abide by its rules.  FINRA was created in 2007 through the consolidation of the NASD and the member regulation, enforcement and arbitration division of the New York Stock Exchange.  Following the consolidation, NASD and NYSE Rules have been consolidated and replaced by the FINRA Rules.

Act establishes a determination by the federal securities regulator the U.S. Securities & Exchange Commission (the "Commission") that the FINRA Code was consistent with and promotes the investor-protection objectives of the Exchange Act and the FINRA Rules. As such, when the Commission approved the FINRA Code and specific provisions referred to herein, they have the force and effect of federal law.

14.     As discussed further below, the dispute between the parties in this proceeding concerns the interpretation of FINRA Code Section 12204 (also known as FINRA Rule 12204), which the Commission first adopted under Exchange Act Section 15A(b)(6) in 1992, Exch. Act Rel. No. 31371, 1992 WL 324491 (Oct. 28, 1992).

15.     FINRA Rule 12204 was finalized in its current form in 2007. Exchange Act Rel. No. 55158, 72 FR 4574-01, 2007 WL 257838 (Jan. 31, 2007) (approving amendments to the Code including in its current number format as FINRA Code Section 12204).

16.     The Customers and Defendant IB disagree about the proper construction of FINRA Rule 12204, more specifically about the rights and duties created by FINRA Rule 12204 as it affects which matters are arbitrable under their applicable Customer Agreements. These agreements contained an arbitration clause incorporating and restating FINRA Rule 12204. (*See* Ex. A, Excerpt from Pannu Customer Agreement, ¶33(B); Ex. B, Excerpt from Husain Customer Agreement, ¶33(B); Ex. C, Excerpt from Trust Customer Agreement, ¶33(B)).

17.     Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a) provides that:

The district courts of the United States … shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulation thereunder.

18.     In so far as this matter arises under and involves the interpretation and enforcement of duties created by the FINRA Rules (*i.e.*, the Code), which are adopted pursuant to the Exchange Act, this Court has exclusive jurisdiction to resolve this dispute.

19.     This Court has personal jurisdiction over defendant IB because it has continuously and systematically conducted business in the state of New York.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this action occurred in this district, and Defendant is deemed to reside in any judicial district in which it is the subject of personal jurisdiction at the time the action is commenced.

21.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

22.     In addition, FINRA Rule 12204(c) provides that a party to a FINRA arbitration that is the subject of a class action may ask the court hearing the class action to resolve the dispute including whether a claim in the arbitration is part of a class action.

23.     On December 1, 2017, a putative class action was filed with this court, *Hauptman, et. al. v. Interactive Brokers, LLC*, Case No. 17-cv-9382, which as discussed herein involves one or more claims that are the subject of the arbitrations between Customers and IB. On this additional ground, therefore, the FINRA Code, with which Customers and IB agreed to abide, specifically directs that a party to an arbitration may apply to the Court hearing the class action to resolve their dispute as to whether the party's claim is part of a class action.

24.     Consistent therewith, Plaintiffs / Customers have applied to this Court, which is hearing the Class Action, for relief in resolving issues as to their eligibility to participate in the class action consistent with the Code.

## FACTUAL BACKGROUND

25.     In or around December of 2011, the Pannus opened an account with Interactive Brokers.

26.     In or around April of 2012, Husain opened an account with Interactive Brokers.

27.     In or around August of 2012, the Trust opened an account with Interactive Brokers.

28.     The Plaintiffs each signed similar Customer Agreements with IB, which included an arbitration clause specifically providing that "any controversy, dispute, claim, or grievance between IB . . . and Customer . . . shall be resolved by arbitration, in accordance with the rules then prevailing of any one of the following: (a) the American Arbitration Association; (b) The [FINRA]; or (c) any other exchange of which IB is a member . . . . all parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, *except as provided by the rules of the arbitration forum in which a claim is filed*." (emphasis added) ("arbitration clause").

29.     The Customer Agreements also expressly incorporate the rules of the forum in which the arbitration is filed, *i.e.,* the FINRA Dispute Resolution forum.

30.     The Customer Agreements provide that "[t]he rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated in this agreement."

### The FINRA Arbitrations

31.     On November 25, 2015, the Pannus initiated an arbitration before FINRA by filing a Statement of Claim against IB, alleging, among other things, that IB failed to fulfill its obligations by liquidating securities in their IB account that worsened their margin deficit, and misrepresented and failed to disclose material facts regarding the mechanisms and parameters

IB utilized in the liquidation of securities within customer brokerage accounts to cover alleged margin debits ("Pannu Arbitration").

32.     On January 16, 2016, IB filed its Answer, Affirmative Defenses, and Counterclaim against the Pannus.

33.     On December 3, 2015 IB initiated an arbitration by filing a Statement of Claim against Husain ("Husain Arbitration"), and on February 3, 2016, IB initiated another arbitration before FINRA by filing a Statement of Claim against the Trust ("Trust Arbitration"), such that IB now was involved in arbitrations against all three Plaintiffs (collectively, "Arbitrations").

34.     In the FINRA Arbitrations, IB alleged that the Trust, Husain and the Pannus all owed it monies due to losses incurred in their Portfolio Margin Accounts with IB, due to a significant rise in the value of options on the VXX, an exchange-traded note or ETN, in which these accounts traded and held short positions.

35.     In the FINRA Arbitrations, IB further alleges that the accounts held by the Trust, Husain and the Pannus all experienced very large margin deficits and that IB had liquidated positions in their respective accounts, but the funds in these accounts were insufficient to satisfy the liabilities allegedly owed to IB.

36.     In the FINRA Arbitrations, IB asserts claims against the Trust, Husain and the Pannus for breach of contract, alleging they breached their respective Customer Agreements by failing to maintain sufficient equity to meet allegedly applicable margin requirements in its account at all times, and by failing to pay the amounts allegedly owed ($1,164,000, $150,000, and $1,321,421, respectively), pursuant to the terms of those agreements.

37.     On March 29, 2016 and January 29, 2016, the Trust and Husain filed their respective Answers, Affirmative Defenses, and Counterclaims.  In addition to denying each of

IB's claims, the Trust and Husain asserted affirmative defenses and counterclaims for breach of contract, breach of fiduciary duty, omission of material facts, conversion/unjust enrichment, negligent misrepresentation, fraud and fraudulent misrepresentation, misleading communications, breach of industry standards, breach of the covenant of good faith and fair dealing, failure to comply with requirements for best execution, and negligence.

38.     Both counterclaims asserted, among other allegations, that IB improperly administered and oversaw the Trust's and Husain's Portfolio Margin accounts, including by—in violation of the FINRA rules and other applicable laws, rules, and regulations, and in breach of the Customer Agreements—failing to determine whether the accounts were eligible for portfolio margin treatment; improperly extending portfolio margin credit secured by VXX ETNs; inappropriately utilizing IB's "risk based" pricing model to determine Portfolio Margin requirements, which failed to protect the accounts; and improperly liquidating the accounts.

**The Central Issue Underlying the Claims Between the Parties in the FINRA Arbitrations**

39.     The central issue underlying the claims between the parties in each of the Arbitrations is whether IB can enforce the Customer Agreements against the Plaintiffs, or whether it is precluded from doing so by its own breach of these agreements and violation of the rules promulgated by FINRA and other regulatory bodies, by, among other things, improperly extending margin credit against the same ETNs, namely the VXX, which were traded in each of the relevant accounts, thereby exposing Plaintiffs to an impermissible level of investment risk, and by improperly liquidating positions in Plaintiffs' accounts.

40.     In sum, IB's and Customer's claims are inextricably intertwined.

**The Customer Agreements' Arbitration Clause Prohibits Arbitrations in the Context of Class Actions Based on the Same Facts and Law and Involving the Same Defendant**

41.     The Customer Agreements' arbitration clause expressly excludes class actions from arbitration.  Each Customer Agreement states[2]:

> *No person shall* bring a putative or certified action to arbitration, nor *seek to enforce any pre-dispute arbitration agreement against any person* who has initiated in court a putative class action, or *who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until*
> * *The class certification is denied, or*
> * *The class is decertified*
> * *The customer is excluded from the class by the court*.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

(*See* Ex. A, ¶33(B); Ex. B, ¶33(B); Ex. C, ¶33(B)).

42.     The Customer Agreements also incorporate the FINRA Rules—each stating that "The rules of the arbitration forum in which the claim is filed…shall be incorporated into this agreement." (*See* Ex. A, ¶33; Ex. B, ¶33; Ex. C, ¶33).

43.     Accordingly, FINRA Rule 12204 is incorporated by reference into the Customer Agreements.  This Rule states:

> (b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, or that is ordered by a court for class-wide arbitration at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code...
> FINRA Rule 12204(b).
>
> ****
>
> (d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:
> * The class certification is denied;
> * The class is decertified;

---

[2] This language in the arbitration agreement is required by FINRA Rule 2268.

- The member of the certified or putative class is excluded from the class by the court; or
- The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

44.     Therefore, each of the Customer Agreements each explicitly referred to FINRA Rule 12204 as well as incorporated the FINRA Rules of arbitration—inclusive of rule 12204—into the agreement.

## The Pending FINRA Arbitration Hearings

45.     The Husain Arbitration is set for a four-day hearing to commence <u>on April 2, 2018</u>.  The Pannu Arbitration is set for a four-day hearing to commence on May 7, 2018.  The Trust Arbitration was set for a five-day hearing to commence on March 19, 2018; however, that hearing was postponed and a new date has not been set.  Thus, as of December 1, 2017, when the class action was filed with this court, no hearings had taken place in the arbitrations and—indeed—all proposed hearing dates were several months off.

## The Class Action

46.      On December 1, 2017, a class action which bears on the same subject matter — *Heather Hauptman, and Timothy Moss v. Interactive Brokers, LL*C, U.S. District Court for the Southern District of New York Case No. 17-cv-9382 (the "Class Action")—was filed against IB in the Southern District of New York.  Plaintiffs are not named as lead plaintiffs in the Class Action.

47.     The Class Action complaint asserts claims against IB for breach of contract, promissory estoppel, unjust enrichment, breach of the duty of good faith and fair dealing, negligence, and for declaratory and injunctive relief.

48.     The Class Action Complaint alleges that IB improperly administered margin accounts, provided portfolio margin treatment for ETNs, such as the VXX, which it alleges—pursuant to FINRA Rule 4210(g)(6)(B) and associated guidance—are ineligible for portfolio treatment, exposed its customers to excessive risk, and as a result caused its customers to experience significant account losses.

49.     The Class Action complaint defines the putative class as "All persons who held a Portfolio Margin Account with Interactive Brokers, LLC containing a position or option in an ETN at any point from December 1, 2011 through the date of judgment, and whose ETN positions received portfolio margin treatment."

50.     Class notices have not been sent or otherwise circulated in the Class Action. Thus, all members of the defined putative class are putative class members: none have opted out of the class, or have been otherwise excluded from the class.

51.     None of the Plaintiffs have opted out of the class in the Class Action or declined to participate in the Class Action.

52.     These claims in the Class Action complaint are based upon, or bear on, the same facts and law, and involve the same defendant as the claims and counterclaims in the three ongoing arbitrations.

53.     Therefore, FINRA Rule 12204 precludes the three arbitrations from proceeding further, unless or until class certification is denied, the class is decertified, Plaintiffs are excluded from the class, Plaintiffs elect not to participate in the class, or Plaintiffs withdraw from the class.

**In Conferrals, IB Acknowledges that Plaintiffs' FINRA Arbitration Claims "entirely overlap with the facts and law underlying plaintiffs' claims in the Putative Class Action," but Refuse to Refrain from Arbitrating in Violation of FINRA Rule 12204**

54.     On March 2, 2018 and March 17, 2018, Plaintiffs' counsel conferred with IB's counsel requesting that they agree to stay the FINRA Arbitrations in light of the ongoing Class Action bearing on the same facts and law and which, if resolved, would resolve the central issue in the arbitrations—whether IB can enforce the Customer Agreements against the Plaintiffs, or whether it is precluded from doing so by its own breach of these agreements and violation of the rules promulgated by FINRA and other regulatory bodies, by, among other things, improperly extending margin credit against the same ETNs, namely the VXX, which were traded in each of the relevant accounts, thereby exposing Plaintiffs to an impermissible level of investment risk, and by improperly liquidating positions in Plaintiffs' accounts.  IB refused to stay the FINRA Arbitrations.

55.     On March 2, 2018, Plaintiffs' counsel requested that IB agree to stay the Trust Arbitration.  It noted that, by IB's own admissions, the Trust is a putative member of the class in the Class Action.  The subject matter of the Trust Arbitration is the same as the subject matter of the Class Action: each bears on, among other topics, the propriety of the placement of IB's investors in ETNs, including options on the VXX, the significant losses IB's investors incurred in their Portfolio Margin Accounts between August 21, 2015 and August 24, 2015, and the respective parties' responsibility therefor.  And, IB is a defendant in each action.  Thus, pursuant to FINRA Rule 12204, the claims submitted in the Trust Arbitration cannot be arbitrated under the FINRA Rules, and IB could not enforce any arbitration agreement against the Trust.

56.     On March 9, 2018, IB responded, acknowledging that the Trust's "*counterclaims entirely overlap with the facts and law underlying plaintiffs' claims in the class action*," and that "*[IB] is a 'defendant' with respect to [the Trust's] counterclaims [in the Trust Arbitration] and*

*in the Putative Class Action*,*"* and asserting that FINRA Rule 12204(b) applied to the Trust's claims such that if the Trust intends to continue to pursue its claims in the arbitration it must opt out of the Class Action in the manner provided by that rule.  However, at the same time, counsel for IB asserted that FINRA Rule 12204 does not apply to *its* claims—such that it does not impose a duty on IB to cease enforcing the arbitration clause or cease arbitrating—because (i) the facts and law with respect to its claims are not the same as those in the Class Action; (ii) it is not a "defendant" with respect to the claims it brought in the arbitration; and (iii) Rule 12204 is intended to apply only when a  class action is filed prior to the arbitration, such that it does not apply to its claims.[3]

57.     On March 12, 2018, counsel for Plaintiffs again conferred with counsel for IB, and IB reiterated its position that although FINRA Rule 12204 applied to the Trust's counterclaims in the arbitration, it did not apply to IB's claims in the arbitration and IB had no duty to cease enforcing the arbitration clause against the Trust or cease arbitrating.

58.     On March 17, 2018, counsel for Plaintiffs conferred with IB requesting that they agree to a stay of all Arbitrations on the same ground as the parties had been discussing with respect to the Trust Arbitration.  IB refused to stay the Arbitrations.

59.     Thus, with respect to all Plaintiffs, IB has taken the position that FINRA Rule 12204(b) and (d) apply to Plaintiffs claims, such that Plaintiffs claims are not arbitrable and IB has a duty to refrain from enforcing the arbitration clause against Plaintiffs with respect to Plaintiffs' claims.  However, IB has at the same time taken the position that FINRA Rule

---

[3] To support this argument, IB relies solely on FINRA Rule 13204—which applies to industry disputes, not customer disputes such as that at issue here.

12204(b) and (d) do not apply to IB's claims, such that IB's claims are arbitrable and IB has no duty to refrain from enforcing the arbitration clause against Plaintiffs with respect to its claims.

60.    On March 16, 2018—in a correspondence seemingly unrelated to the foregoing conferrals—IB notified Huzaifa Husain that because he "is a member of the putative class," pursuant to FINRA Rule 12204(b) Husain may not assert in the arbitration "any counterclaims based on issues similar to those raised in the [Class Action] unless he waives his right to proceeds a member of the Putative Class."

61.    Thus, while continuing to assert it has no duty under FINRA Rule 12204 to refrain from arbitrating its actions to enforce the terms of the Customer Agreement to collect Plaintiffs' purported "debts," IB  simultaneously in effect contends that the rule bars Plaintiffs, having elected to pursue their claims in the Class Action, from litigating their claims against IB in the Arbitrations, even though litigating overlapping claims in different forums could foreseeably result in contradictory and conflicting decisions and judgments between the Arbitrations and the Class Action.

## FIRST CLAIM FOR RELIEF—DECLARATORY JUDGMENT PURSUANT TO THE CUSTOMER AGREEMENTS AND FINRA RULE 12204(B) INCORPORATED THEREIN

62.    Plaintiffs restate and incorporate by reference each and every averment set forth in the above paragraphs as if fully set forth herein.

63.    All conditions precedent to this claim have occurred or been performed, including Plaintiffs' good faith attempts to confer with IB.

64.    Under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57, this Court may declare the respective rights, duties, and other legal relations of the parties under the respective Customer Agreements, including whether arbitration may be stayed.

65.     As set forth herein, there is an actual controversy between the parties regarding the proper construction and obligations applicable to the Customer Agreement, the interpretation of and duties inherent in Code Section 12204, the arbitration clause set forth in the Customer Agreement incorporating Code Section 12204, whether the claims in the Arbitrations are based on the same facts and law, and involve the same defendants, as the Class Action.

66.     For the reasons set forth herein, Customers' claims in the Arbitration shall not be arbitrated until such time that Customers file with FINRA one of the following: (1) a copy of a notice filed with the court in which the class action is pending that the party will not participate in the class action or in any recovery that may result from the class action, or has withdrawn from the class according to any conditions set by the court; or (2) a notice that the party will not participate in the class action or in any recovery that may result from the class action.

67.     For the reasons set forth above, the Court should enter a declaratory judgment that the conditions for operation of FINRA Rule 12204 operate here to exclude Plaintiffs' claims from the scope of their respective arbitration clauses because:

a.      The Trust, Husain and the Pannus are members of the putative class in the Class Action,

b.      The claims in the three arbitrations and the Class Action are based on the same facts and law against the same defendant;

c.      The Court in the Class Action has not ordered Plaintiffs' excluded from the Class,

d.      The court has not refused to certify the Class so that Plaintiffs' are still putative members of the class; and

e.      Plaintiffs' have not opted out or otherwise declined to participate in the Class Action so that they are putative members of the Class

16

68.     Accordingly, Plaintiffs' and IB's claims are excluded from the scope of the arbitration clause in the Customer Agreements and cannot be arbitrated before FINRA unless or until the conditions for Plaintiffs' participation in the Class Action change.

## SECOND CLAIM FOR RELIEF—DECLARATORY JUDGMENT PURSUANT TO THE CUSTOMER AGREEMENTS AND FINRA RULE 12204(D) INCORPORATED THEREIN

69.     Plaintiffs restate and incorporate by reference each and every averment set forth in the above paragraphs as if fully set forth herein.

70.     All conditions precedent to this claim have occurred or been performed, including Plaintiffs' good faith attempts to confer with IB.

71.     Defendants' have acknowledged Plaintiffs' right to participate in the Class Action, but only with respect to their own claims, while Defendants contend that they are still entitled to pursue its own claims in arbitration and have no duty to refrain from enforcing the arbitration clause with respect to its own claims.

72.     In so far as Customers and Defendant have claims based on a common nucleus of operative facts and the Arbitrations and the Class Action involve ostensibly the same claim, Defendant cannot continue to arbitrate its claims simultaneously with the Class Action.

73.     Defendant's continued effort to enforce the Customer Agreement with respect to Customers, and specifically the arbitration clause, violates Defendant's duties under FINRA Rule 12204(d) because it prevents Customers from participating in the class and/or seeks to prevent class certification of the Class Action.

74.     Under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57, this Court may declare the respective rights, duties, and other legal relations of the parties under the respective Customer Agreements, including whether arbitration may be stayed.

75.     When an agreement to arbitrate expressly precludes arbitration under certain circumstances, and one of those enumerated circumstances exists, a party cannot be compelled to arbitrate.

76.     The Court should enter a declaratory judgment that Trust, Husain and the Pannus are members of the putative class in the Class Action, and that the claims in the Arbitrations are the subject of the Class Action, such that IB may not enforce any arbitration agreement against the Trust, Husain and the Pannus until (a) class certification is denied, (b) the class is decertified, (c) Plaintiffs are excluded from the class by the Court, or (d) Plaintiffs elect not to participate in the class or withdraw from the class according to conditions set by this court.

77.     The Court should enter a declaratory judgment that IB is precluded from enforcing the arbitration clause of their Customer Agreement, including by continuing to litigate the Arbitrations which constitutes a violation of FINRA Rule 12204(d).

### THIRD CLAIM FOR RELIEF—PRELIMINARY INJUNCTION PURSUANT TO FEDERAL ARBITRATION ACT 9 U.S.C. §§ 3 and 4

78.     Plaintiffs restate and incorporate by reference each and every averment set forth in the above paragraphs as if fully set forth herein.

79.     Plaintiffs are entitled to a preliminary injunction ordering a stay of the three arbitrations and restraining and enjoining IB and its agents from submitting any dispute against Plaintiffs to arbitration, from continuing the arbitrations, and from enforcing any arbitration agreement against Plaintiffs unless and until (a) class certification is denied, (b) the class is decertified, (c) Plaintiffs are excluded from the class by the Court, or (d) Plaintiffs elect not to participate in the class or withdraw from the class according to conditions set by this court, if any, for the following reasons:

a. Plaintiffs would be irreparably harmed if they are forced to move forward in arbitration, contrary to the clear directive of the express terms of the Customer Agreements and the FINRA rules, including because they will incur unnecessary costs and waste resources, and it is questionable whether any award in the Arbitrations would be enforceable given the pending Class Action involving the same claims as those asserted in the Arbitrations.

b. Plaintiffs are likely to succeed on the merits of their position, including because they have alleged facts sufficient to show the following:

    i. The Customer Agreements' arbitration clause expressly incorporates FINRA Rule 12204(b), and (d), and explicitly excludes from arbitration circumstances where the investors are members of a putative class in a class action, and the claims in the arbitration are based upon the same facts and law, and involve the same defendants as a putative class action.

    ii. The Customer Agreements' arbitration clause also expressly excludes class actions from arbitration.

    iii. The claims in the three Arbitrations are based on the same facts and law, and involve the same defendant, as the Class Action.

    iv. Plaintiffs are members of the putative class in the Class Action.

    v. Thus, the Customer Agreement, and FINRA Rules 12204(b) and (d), mandate that the three Arbitrations "shall not be arbitrated under the Code," and that IB cannot enforce any arbitration clause against the Plaintiffs under the circumstances present here.

c.  IB will not suffer comparable harm if the Arbitrations are stayed and it is temporarily or preliminarily enjoined from submitting any dispute with Plaintiffs to arbitration, from continuing the Arbitrations, and from enforcing or attempting to enforce the arbitration clauses in the Customer Agreements against Plaintiffs.

d.  The public interest favors an order staying the Arbitrations, including because staying the Arbitrations would further the underlying customer/consumer protection purposes of FINRA, and provide Plaintiffs the access to the court systems that was intended by FINRA Rule 12204.

80.  Plaintiffs have no plain, adequate or complete remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court:

A.  Declare that Plaintiffs are  members of the putative class in *Heather Hauptman, and Timothy Moss v. Interactive Brokers, LLC*, U.S. District Court for the Southern District of New York Case No. 17-cv-9382;

B.  Declare that the FINRA Arbitrations as comprised of the Pannus' Statement of Claim, the Trust and Husain's, Answers, Affirmative Defenses, and Counterclaims, and IB's Statements of Claim against the Trust and Husain, and its Answer, Affirmative Defenses and Counterclaim against the Pannus are based upon the same facts and law as, the Class Action and involve the same defendant.

C.  Declare that IB may not enforce any arbitration clause  against the Trust, Husain and the Pannus until (a) class certification is denied, (b) the class is decertified, (c) Plaintiffs are excluded from the class by the Court, or (d) Plaintiffs elect not to participate in the class or withdraw from the class according to conditions set by this court.

D.     Declare that there is no agreement to arbitrate under the circumstances present here.

E.     Issue an Order for a preliminary injunction ordering a stay of the three arbitrations and temporarily and preliminarily restraining and enjoining IB and its agents from submitting any dispute against Plaintiffs to arbitration, from continuing the arbitrations, and from enforcing any arbitration agreement against Plaintiffs unless and until (a) class certification is denied, (b) the class is decertified, (c) Plaintiffs are excluded from the class by the Court, or (d) Plaintiffs elect not to participate in the class or withdraw from the class according to conditions set by this court.

F.     Such other and further relief as the Court deems just and proper.

Dated: March 22, 2018
       New York, New York

HOLLAND & KNIGHT LLP

By:____/s/ Sean C. Sheely_____
       Sean C. Sheely

31 West 52nd Street
New York, NY  10016
Tel:  (212) 513-3538
Fax:  (212) 385-9010
sean.sheely@hklaw.com

*Attorneys for Plaintiffs*
*Tejinder Singh Glamour and Maninder Pal Glamour solely in their capacity as Trustees for The Tejinder S. Glamour and Maninder P. Glamour Revocable Living Trust, Sukhminder Pannu, Prabhjot Dhillon, and Huzaifa Husain*

#55958223_v4